UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEJA L. PASCHAL,<br>    Plaintiff,<br><br>v.<br><br>CTO SANTILI,<br>    Defendant. | CIVIL ACTION NO.<br>3:16-cv-1690 (JCH)<br><br><br><br>JULY 6, 2017 |

**RULING ON PENDING MOTIONS (DOC. NOS. 21, 22, 23, 31, AND 33)**

The plaintiff, Deja L. Paschal ("Paschal"), is currently incarcerated at Northern Correctional Institution ("Northern").[1] He has filed a Motion to Amend Complaint (Doc. No. 21), a Motion for Summary Judgment (Doc. No. 23), a Motion for Protective Order (Doc. No. 22), a renewed Motion for Appointment of Counsel (Doc. No. 31), and a Motion to Amend the Motion for Summary Judgment (Doc. No. 33). For the reasons set forth below, the court grants Paschal's Motion to Amend the Motion for Summary Judgment (Doc. No. 33) and denies the four other motions.

**I.   MOTION TO AMEND TO ADD RELIEF (DOC. NO. 21)**

Paschal seeks leave to amend his Complaint to add a new request for relief. Specifically, he seeks to add the following request: "The plaintiff also respectfully asks the court to waive any costs of incarceration that may be deducted from the money awarded." Mot. Add Relief at 1.

---

[1] Paschal refers to himself as also being known as or now being known as Kyle Lamar Paschal or Kyle Lamar Paschal-Barros. See Mots., Doc. Nos. 21, 22, 23 at 1. Department of Correction records reflect that his inmate number, 390410, is still associated with the name of Deja Lamar Paschal. Because Paschal has provided no proof of a name change, the court will continue to refer to him as Deja Lamar Paschal.

1

The defendant, CTO Santili ("Santili"), filed an answer to the Complaint on February 16, 2017. Because Paschal's Motion seeking to file an amended complaint to add a new request for relief was filed more than twenty-one days after service of the Answer to the Complaint, Paschal may not amend as of right. See Rule 15(a)(1)(B). After the time to amend as of right has passed, "[t]he court should freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to grant a litigant leave to amend under Rule 15(a), the court considers such factors as undue delay, bad faith, dilatory motive, undue prejudice and futility of the amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962).

Pursuant to Connecticut General Statutes § 18-85a, the State of Connecticut is authorized to assess an inmate for the costs of his or her incarceration. See Regs. Conn. State Agencies § 18-852-3 ("On or after October 1, 1997, inmates shall be charged for and shall be responsible to pay the assessed cost of incarceration, as defined in [Conn. State Agencies §] 18-8a-1(a)."). To enforce the assessment of incarceration costs, Connecticut General Statutes § 18-85b and Regulations of Connecticut State Agencies § 18-85a-2 authorize the State to place a lien on any recovery awarded to an inmate in connection with a civil lawsuit. Specifically, Connecticut's repayment of costs of incarceration statute provides:

> [i]n the case of causes of action of any person obligated to pay the costs of such person's incarceration under section 18-85a and regulations adopted in accordance with said section . . . the claim of the state shall be a lien against the proceeds therefrom in the amount of the costs of incarceration or fifty per cent of the proceeds received by such person after payment of all expenses connected with the cause of action, whichever is less . . . .

Conn. Gen. Stat. § 18-85b(a). In addition, the statute provides that any recovery an inmate receives from a civil lawsuit may be assigned directly to the State of Connecticut and that the lien "shall constitute an irrevocable direction to the attorney for such person to pay the Commissioner of Correction . . . in accordance with its terms . . . ." Id.

In its initial review of the Complaint, the Court dismissed all official capacity claims against Santili and concluded that the case would proceed only as to the Eighth Amendment failure to protect and deliberate indifference to safety claims against Santili in his individual capacity. The Complaint does not include a challenge to the legality or constitutionality of the costs of incarceration statute. This court does not have the authority to grant an exception to a statute, and therefore cannot give Paschal the relief he requests.

Furthermore, Santili, in his individual capacity, has no authority to waive costs of incarceration. The court therefore lacks the authority to grant Paschal relief from the costs of incarceration statute. See, e.g., Himmelreich v. Warden FCI Danbury, No. 3:14-cv-930(SRU), 2014 WL 5783003, at *1 (denying injunction in part because the officials named in the injunction were not parties to the case and the court therefore lacked personal jurisdiction).

Finally, even if Paschal has properly plead a challenge to the statute itself, and had brought this claim against the Commissioner of Connecticut's Department of Correction in his official capacity, Paschal would still lack standing to challenge the legality of the costs of incarceration statute. The "irreducible constitutional minimum of standing" requires an injury in fact which is both "concrete and particularized" and

3

"actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). The proper time to raise a challenge to the Connecticut costs of incarceration statute would be when the State of Connecticut is enforcing it against a settlement or award of damages pursuant to title 42 section 1983 of the United States Code. See, e.g., Bonilla v. Semple, No. 3:15-CV-1614 (VAB), 2016 WL 4582038 (D. Conn. Sept. 1, 2016) (addressing a challenge to section 18-85b after settlement of a section 1983 action and after "the Connecticut Department of Administrative Services demanded that [the plaintiff] give them roughly half of the settlement proceeds under a 'cost of incarceration' lien"). Unless and until Paschal receives a settlement or monetary damages from the pending action, and the State of Connecticut enforces the costs of incarceration statute against him, Paschal has neither an "actual" or an "imminent" harm to redress, and therefore does not have standing to bring this claim.

For these reasons, Paschal's Motion to Amend to Add Relief (Doc. No. 21) is **DENIED** as futile at this time.

## II. MOTION TO AMEND MOTION FOR SUMMARY JUDGMENT (DOC. NO. 33)

Paschal filed a Motion for Summary Judgment on March 27, 2017. (Doc. No. 24). On April 18, 2017, Santili filed an Objection to Paschal's Motion for Summary Judgment, pointing out that the Motion for Summary Judgment was procedurally deficient because it was not accompanied by a memorandum of law or a statement of facts as required by Local Rule of Civil Procedure 56(a). Paschal subsequently filed a Motion to Amend his Motion for Summary Judgment on June 6, 2017, in an effort to

address these shortcomings. Because the proposed amendment does not alter the substance of Paschal's Motion for Summary Judgment, and because the Motion for Summary Judgment and the Motion to Amend it were both filed well before the dispositive motions deadline of July 20, 2017, see Martinez v. Quality Value Convenience, Inc., 63 F. Supp. 2d 651, 655 (E.D. Pa.) (discussing timeliness requirement for amendment of motions), Paschal's Motion to Amend his Motion for Summary Judgment is **GRANTED**. The Clerk shall docket a copy of the Motion to Amend the Motion for Summary Judgment as a Local Rule 56(a)1 Statement and a Memorandum of Law in Support of the Motion for Summary Judgment.

### III. MOTION FOR SUMMARY JUDGMENT (DOC. NO. 23)

Paschal moves for summary judgment on all claims in the Complaint. In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that he is "entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In support of his Motion for Summary Judgment, Paschal re-iterates the facts set forth in the Complaint and attaches exhibits that he claims support the facts. He asserts that he has exhausted his administrative remedies as to his claims and is entitled to summary judgment as a matter of law.

As described above, Santili objects to the Motion for Summary Judgment on the ground that Paschal did not submit a Local Rule 56(a)1 Statement or a memorandum in support of his motion. Subsections 1 and 4 of Local Rule 56(a) require that a motion for summary judgment be accompanied by memorandum and a Local Rule 56(a)1 Statement. The "'Local Rule 56(a)1 Statement,' [must] set[s] forth in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." See id. at 1. Local Rule 56(a)3 requires that each statement in the Rule 56(a)1 Statement "be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."

Although Paschal's amendment to the Motion for Summary Judgment attempts to remedy the defects in his original Motion for Summary Judgment, the Local Rule 56(a)1 Statement does not meet the requirements of Local Rule 56(a)1 or 3. Each paragraph includes multiple statements instead of one concise statement of fact as required by Local Rule 56(a)1. In addition, some of the statements are not statements of fact, but rather are arguments made in support of the Motion for Summary Judgment. Furthermore, the first and second paragraphs are not supported by a reference to specific evidence as required by Local Rule 56(a)3. See id.

As indicated above, Paschal has now filed a memorandum in support of his Motion for Summary Judgment. Thus, the Motion for Summary Judgment complies with

6

the requirement that a memorandum of law be filed in support of a motion for summary judgment pursuant to Local Rule 56(a)1 and 4.

In the conclusion of his Motion for Summary Judgment, Paschal argues that the failure of the defendant to deny his allegations in the Answer to the Complaint entitles him to judgment as a matter of law because there are no factual issues in dispute. See Mot. Summ. J., Doc. No. 23 at 3. Under Rule 8(b)(5), Fed. R. Civ. P., a defendant may respond to an allegation in a complaint by stating that he or she "lacks knowledge or information sufficient to form a belief about the truth of [the] allegation." Such a "statement has the effect of a denial." Id. Santili filed an Answer that addresses the allegations in the Complaint. See Answer, ECF No. 14. Santili admitted one allegation pertaining to the fact that prison officials did not discipline him for any alleged misconduct in connection with the altercation between Paschal and Inmate Thulin, denied two other allegations, and stated that he lacked sufficient information upon which to form a belief as to the truth of the remainder of the allegations. See id. at 1–2. The answer also included affirmative defenses. See id. at 3. The one allegation that Santili admitted was true does not demonstrate a lack of factual issues in dispute.

Paschal also contends that the exhibits to his Motion for Summary Judgment and Memorandum in Support of the Motion, demonstrate that he is entitled to summary judgment. The exhibits consist of: copies of the incident and medical incident reports documenting the altercation between Paschal and Inmate Thulin, a handwritten copy of the inmate request that Paschal allegedly sent to Santili on November 11, 2015, two pages from an Department of Correction administrative directive, Santili's Answer to the

Complaint, and Santili's Responses to Paschal's Second Request for Admissions. This documentary evidence, in of itself does not demonstrate that there are undisputed issues of material facts with regard to the claims of deliberate indifference to safety and failure to protect.

The claim in this action relates to Santili's alleged knowledge of a risk of harm to Paschal and his failure to protect Paschal from that harm. The duty of prison officials to make reasonable efforts to ensure inmate safety includes taking appropriate action "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832–33 (internal quotation marks omitted). To state a failure to protect or deliberate indifference to safety claim under the Eighth Amendment, an inmate must demonstrate both that "he [was] incarcerated under conditions [that] pos[ed] a substantial risk of serious harm" and that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. Id. at 834, 837.

At the pleading stage, a plaintiff may rely on an allegation that he sent a letter or request to a defendant "at an appropriate address and by appropriate means" to show that the defendant became aware of the contents of the letter regarding unconstitutional conditions of confinement, but failed to take action to remedy the conditions. Grullon v. City of New Haven, 720 F.3d 133, 141 (2d Cir. 2013). Once a plaintiff moves for summary judgment, however, he must provide evidence to support his claim that the defendant in fact received the letter, had actual knowledge of the risk of harm or unconstitutional conditions, and failed to make any effort to remedy the conditions or to

prevent or protect the plaintiff from the harm.  See Farmer, 511 U.S. at 836–37 (subjective prong of Eighth Amendment standard requires that the charged official act or fail to act while actually aware of a substantial risk to inmate safety or health); Cash v. County of Erie, 654 F.3d 324, 241 n. 8 (2d Cir. 2011) (in proving a prison conditions claim under the Eighth or the Fourteenth Amendment, "deliberate indifference is a subjective standard requiring proof of actual knowledge of risk by the prison official.").

Attached to the Motion for Summary Judgment is a handwritten copy of the request that Paschal alleges he sent to Santili on November 11, 2015.  Paschal has not, however, submitted evidence to support his allegation that Santili received this written request in time to prevent the altercation between himself and Inmate Thulin.  Instead, he contends that the court should assume that Santili received the request prior to the altercation and should have investigated his allegations and taken steps to keep him safe.

In the short section titled "Memorandum of Law/Statement" included in the amendment to the Motion for Summary Judgment, Pascal argues that Santili has conceded that he received the inmate request dated November 11, 2015, and was on notice of the threat from Inmate Thulin prior to the assault.  Paschal states that Santili admitted, in his response to a second request for admissions, that he had received inmate request forms that were actually received by him on November 12, 2015.  Paschal has submitted a copy of Santili's responses to the second request for admissions as an exhibit to the memorandum in support of the motion for summary judgment.  See Exs., Doc. No. 34.

9

In response to the Motion for Summary Judgment, Santili has filed an Affidavit. See Obj. Mot. Summ. J., Ex. 1, Doc. No. 25-1. In that Affidavit, Santili denies ever receiving the request regarding Paschal's concerns that Inmate Thulin might cause him harm and was not otherwise aware of any problems between Paschal and Inmate Thulin prior to the altercation between the Paschal and Thulin. See id., Santili Aff. ¶¶ 4-6. Santili has also filed a Local Rule 56(a)2 Statement in response to Paschal's Local Rule 56(a)1 Statement in which he denies ever receiving or admitting to having received the November 11, 2015 inmate request. See Local Rule 56(a)2 Statement, Doc. No. 40 at 1-2.

In the response to the Second Request for Admissions, Santili admits only that he received inmate requests that he *actually* received on the dates of November 12 – 16, 2015. See Ex. 2, Doc. No. 34 at 4(E)-(G); Ex. 3. Doc. No. 35-3 at 2(E)-(G) & 3(H)-(I). Because Santili states in his Affidavit that he never received the November 11, 2015 inmate request from Paschal, there is a material issue of fact in dispute regarding whether Santili had knowledge of a serious risk of harm to Paschal prior to the altercation between Paschal and Inmate Thulin. Paschal has not shown that there is an absence of material facts in dispute regarding the second prong of the Eighth Amendment standard or that he is entitled to judgment as a matter of law. Thus, he has not met his burden under Rule 56(a), Fed. R. Civ. P. The Motion for Summary Judgment is therefore denied.

## III. MOTION FOR AN ORDER OF PROTECTIVE CUSTODY (DOC. NO. 22)

Paschal states that he has been placed in the administrative segregation program at Northern. He is currently in phase one of the program. He claims that several other prisoners have threatened to kill him or to have him killed when he transitions to phase two of the program. Paschal states that phase two of the administrative segregation program is less restrictive. He believes that it will be not be difficult for the inmates who have threatened to harm him to carry out their threats after prison officials determine that he may progress to phase two.

Paschal has reported the threats to his safety to his unit manager, the director of security, the director of classification and population management and mental health staff at Northern. He claims that no staff member has responded to his claims that other inmates are threatening to harm him. He seeks an order directing the Department of Correction to place him in protective custody.

As indicated above, the case proceeds against Correctional Treatment Officer Santili in his individual capacity only. As such, Santili cannot provide official capacity relief to Paschal.

In addition, the claim against Santili relates to an incident that occurred at Garner Correctional Institution in November 2015. The relief sought in the Motion for Protective Order is unrelated to the allegations against the sole defendant named in the complaint and would involve the court's interference with the management of the prison in which Paschal is now confined. It would be inappropriate for the court to enter an order with regard to claims that are unrelated to the claim and the defendant in the lawsuit before

the Court. See De Beers Consol. Mines Ltd. v. United States, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which relief may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside the issues in the suit."); Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997) ("a preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action"); Lewis v. Johnson, No. 08-CV-482(TJM)/ATB, 2010 WL 1268024 (N.D.N.Y. Apr. 1, 2010) (denying motion for preliminary injunction based on actions taken by staff at Great Meadow Correctional Facility in 2010, where complaint alleged wrongdoing by staff at Franklin and Upstate Correctional Facilities in 2006 and 2007).

Furthermore, counsel for the Santili has filed a Memorandum in Opposition to the Motion in which he represents to the court that he contacted prisoner officials at Northern regarding Paschal's concerns for his safety. See Obj. Mot. Protective Order, Doc. No. 26 at 3. Counsel relates that, on April 7, 2017, a correctional counselor became aware of Paschal's claims regarding his safety and communicated those concerns to Paschal's unit manager. See id. Prison officials have prepared a Protective Custody package for Paschal, but Paschal's unit manager is recommending that the request for protective custody be denied because Paschal is currently on single-cell status in phase one of the administrative segregation program. See id. It is apparent that officials at Northern have responded to Paschal's concerns and have concluded that he is not currently in danger of imminent harm.

Paschal is not precluded from making staff at Northern aware of any safety concerns that arise in the future. In addition, when Paschal progresses to phase two, he may address any concerns about being celled with another inmate with prison officials at that time. For all of the reasons stated above, the Motion seeking injunctive relief in the form of an order directing the Department of Correction to place Paschal on protective custody status is denied.

## IV.     MOTION FOR APPOINTMENT OF COUNSEL (DOC. NO. 31)

On April 10, 2017, the court denied Paschal's second Motion for Appointment of Counsel without prejudice to refiling at a later time because he had not demonstrated that he had made sufficient attempts to find counsel to assist or represent him. See Rul. Mot. Appoint Counsel, Doc. No. 24. Paschal renews his Motion and states that he called two law firms in March 2017, and made a follow up call to one of the firms earlier this month. No one from either firm has contacted him either in writing or by telephone.

Paschal states that he is still waiting to hear back from an attorney at the Inmate Legal Aid Program. The attorney has been reviewing Paschal's Complaint to determine its merit and previously sent him copies of the Federal Rules governing discovery. Paschal indicates that he is in the process of conducting discovery and has served discovery requests on Santili. Paschal does not indicate that he attempted to telephone or to write to this attorney since the court denied the prior motion for appointment of counsel in April 2017. Although the attorney at the Inmate Legal Aid Program may not be able to represent Paschal in this action, she may be able to answer questions that he might have about conducting further discovery.

The court concludes that Paschal has not shown that he unable to secure legal assistance on his own. If he seeks further assistance in conducting discovery in this matter, he may write to or call the Inmate Legal Aid Program. Accordingly, the Motion for Appointment of Counsel is denied without prejudice. See Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986).

IV. **CONCLUSION**

The Motion to Amend the Motion for Summary Judgment (Doc. No. 33) is **GRANTED**. The Clerk shall docket a copy of the Motion to Amend (Doc. No. 33) as a Memorandum and Local Rule 56(a)1 Statement in support of the Motion for Summary Judgment (Doc. No. 23). The Motion to Amend to Add Relief (Doc. No. 21), the Motion for Summary Judgment (Doc. No. 23), and the Motion for Protective Order (Doc. No. 22) are **DENIED**. Paschal may pursue claims regarding conditions of confinement at Northern in a separate action.

The Motion for Appointment of Counsel (Doc. No. 31) is **DENIED without prejudice** to refiling at a later stage of litigation. Any renewal of this Motion shall be accompanied by a summary of any attempts to obtain counsel or legal assistance, including the names of the attorneys contacted, the dates upon which Paschal made those contacts, and the reasons why assistance was unavailable.

On May 23, 2017, the Court granted Paschal's Motion for Extension of Time to complete discovery. The new deadline for completion of discovery is **September 19, 2017.** The deadline for filing summary judgment motions is extended to **October 19, 2017.**

**SO ORDERED.**

Dated at New Haven, Connecticut this 6th day of July, 2017.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge